**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**UNITED ARTISTS' THEATRE CIRCUIT, INC.,**

                              **Plaintiff,**

v.

**KAUFMAN BEDROCK ASTORIA I, LLC,**

                              **Defendant.**

-------------------------------------------------------------------X

**Civil Action No.:**

**COMPLAINT**
**JURY TRIAL DEMANDED**

Plaintiff, United Artists' Theatre Circuit, Inc. ("United Artists"), by its undersigned attorneys, as and for its Complaint against defendant Kaufman Bedrock Astoria I LLC ("Landlord"), alleges as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (diversity).

2. The amount in controversy (i.e., the value of the object of the litigation which is an interest in real property pursuant to a lease, as set forth below) exceeds $75,000.00, exclusive of interest and costs.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2).

## THE PARTIES

4. United Artists is a Maryland corporation registered to do business in the state of New York, and operates a movie theater at 35-50 37th Street, and 35-60 38th Street, Queens, New York. United Artists' principal place of business is in Tennessee.

5. Landlord is a New York limited liability company with its principal address at 34-12 36th Street, Astoria, New York 1106. Its members are Kaufman Astoria Studios, Inc., Bedrock Real Estate Partners LLC, and Silverstein Properties, Inc.

6. Kaufman Astoria Studios, Inc. is a New York corporation with its principal address at 34-12 36th Street, Astoria, New York 1106.

7. Bedrock Real Estate Partners LLC ("Bedrock") is a New York limited liability company with its principal address at 501 5th Avenue, Suite 1803, New York, New York 10017, with its registered agent and address of service at Corporation Service Company, 80 State Street, Albany, New York 12207. Upon information and belief, its members are Chuck Berman, Tracy Applebaum, and Jay Martin.

8. Upon information and belief, none of Bedrock's members are citizens of Maryland.

9. Silverstein Properties, Inc. is a New York corporation with its principal address at 7 World Trade Center, 250 Greenwich Street, 38th FL, New York, New York 10017, with its registered agent and address of service at Corporation Service Company, 80 State Street, Albany, New York 12207.

## THE NATURE OF THE ACTION

10. United Artists properly exercised its first of five options to extend the Lease (as that term is defined below). Landlord improperly rejected United Artists' exercise of the option, effectively terminating the lease on July 5, 2021. Landlord's actions violate the terms of the Lease and deprive United Artists of its interest in the Lease.

## FACTS

**The Lease**

11. United Artists' predecessor-in-interest, Regal Cinemas, Inc., and Landlord's predecessor-in-interest, FC Steinway Street Associates, LLC, entered into a lease for the premises described as 35-50 37th Street, 35-01 37th Street, and 35-60 38th Street, Queens New York (the "Premises"), as subsequently amended pursuant to the "Amendment of Lease," the "Additional Space Agreement," and "Second Amendment of Lease" (collectively referred to as the "Lease"). A true and accurate copy of the Lease is attached hereto as **Exhibit A**. A true and accurate copy of the Second Amendment to the Lease is attached hereto as **Exhibit B**.

12. The Lease is a valid and enforceable contract.

**The COVID-19 Pandemic**

13. In or about January 2020, the global health crisis caused by the novel virus known colloquially as "COVID-19" began, endangering the lives of nearly 4.5 million people in the world who are known to have contracted the virus, and shutting down the worldwide economy.

14. In response to the severity of the deadly crisis, New York State Governor Andrew Cuomo issued a series of executive orders, which, among other things, declared a state disaster emergency for the entire state of New York; ordering movie theaters,

specifically, to cease operations at 8:00PM on March 16, 2020, until further notice; which restrictions were extended until May 15, 2020; and then further extended until June 7, 2020; and which prohibited the initiation of a proceeding or enforcement of an eviction of any residential or commercial tenant for nonpayment of rent until August 20, 2020 (hereafter, collectively, the above-referenced executive orders are referred to as the "NYS on PAUSE Orders").

15. In accordance with the NYS on PAUSE Orders (and, critically, to protect the health and safety of its patrons and staff), United Artists ceased its movie theater business operations at the Premises.

16. Almost immediately after the public health crisis was declared, Landlord demanded United Artists pay all rents, but indicated it would agree not to pursue rent (and enter into a short-term standstill agreement) if United Artists would agree that it was in default of its rental obligations under the Lease. Landlord also required United Artists to agree to negotiate a new deal based on a previously-rejected (and unreasonably onerous) term sheet (the "Term Sheet"). The Term Sheet would have required United Artists to move into a new theater on property being developed by Landlord and agree to make a substantial capital investment in order to pay for a portion of costs of building the new theater by incurring additional lease expenses of $2 million per year above and beyond their then-current expenses after moving, among other things, all so Landlord could develop the existing theater at a profit.

17. United Artists advised Landlord at the beginning of the public health crisis that its performance should be forgiven because performance of the Lease is impossible, impracticable, and the purpose of the Lease (the operation of a movie theater at the Premises) is frustrated during the Crisis, and further advised Landlord of this position via letter dated April 22, 2020, and in subsequent e-mails and telephone conversations between Landlord and United Artists.

**Notices to Cure**

18. Notwithstanding the fact that the performance of the Lease was impossible/impracticable due to the health and safety issues caused by the global pandemic and due to the NYS on PAUSE Orders, Landlord sent two Notices of Default and Notice to Cure (the "May Notices to Cure"), dated May 18, 2020 which alleged that United Artists' failure to pay rent charges (in the amount of $203,166.66) and additional rent charges (totaling $90,434.10) which were allegedly due May 1, 2020 were a default under the Lease, and which threatened to terminate the Lease if this alleged default was not cured on or before June 2, 2020, in violation of the NYS on PAUSE Orders. A true and accurate copy of the May Notices to Cure is annexed hereto as **Exhibit C**.

**State Court Action**

19. United Artists commenced a state court action in the Supreme Court of New York, Queens County, on or about May 27, 2020, to prevent Landlord from terminating the Lease after it issued the May Notices. The state court action was entitled *United Artists' Theatre Circuit, Inc. v. Kaufman Bedrock Astoria I, LLC*, Index No. 705911/2020.

20. The state court extended the cure periods set forth in the May Notices via several interim orders (respectively issued on May 28, 2020, June 25, 2020, September 11, 2020) (the "Interim Orders") and by an order, dated December 4, 2020 which granted United Artists' Yellowstone relief, ordered United Artists to pay past-due rent and rent on an ongoing basis, and further extended the cure period to January 8, 2021 (the "Yellowstone Order"). Interim Orders and Yellowstone Order, NYSCEF Doc. Nos. 14, 35, 52, and 60, attached hereto as **Exhibit D.**

21. The Interim Orders also prohibited Landlord from issuing any other notices of default.

22. Accordingly, the cure period was extended from the time of the May Notices up to and including January 8, 2021.

**Exercise of Option and Rejection**

23. The Lease expires July 5, 2021. United Artists has five, five-year options to extend the term.

24. Section 9.5 of the Lease states that United Artists may exercise its option to extend the term of the Lease provided it notifies Landlord in writing no less than nine months prior to the commencement of each extension term, and that at the time of the extension and on the commencement of the term, United Artists "is not in default of the terms and conditions of the Lease **beyond the expiration of any applicable grace and notice periods…**" Ex. A (Lease), Sec. 9.5 (emphasis added).

25. Pursuant to its rights under the Lease, United Artists exercised the option by timely sending written notice on October 2, 2020 that it was exercising its option to extend the Lease. Letter attached hereto as **Exhibit E.**

26. On October 5, 2020, Landlord wrote back to United Artists, rejecting United Artists' exercise of the option. The letter (**Exhibit F**) claimed that United Artists was not permitted to exercise its option because it was, at that time, allegedly in default pursuant to the May Notices and "beyond the expiration of any applicable grace or notice period." This is demonstrably false. As set forth above, as the cure periods were extended, at this time and until January 8, 2021.

27. United Artists was not, at the time it exercised its option, in default of the Lease beyond any applicable cure period.

28. The Interim Orders extended the cure period pursuant to the alleged defaults set forth in the May Notices. The Interim Orders also prohibited Landlord from issuing any other notices of default.

29. United Artists is not now in default of the Lease.

30. Counsel for United Artists wrote to Landlord's counsel on October 12, 2020 (**Exhibit G**), responding to the October 5, 2020 letter and never received a response.

31. Landlord has no basis to reject United Artists' exercise of the option to extend under the Lease and should be prohibited from doing so. United Artists paid the full amount of past due rent and taxes in spite of the great difficulty that presented after almost a year of having been required to close its business.

32. If United Artists is not allowed to exercise the option to extend the Lease, it will terminate on July 5, 2021 at great harm to United Artists.

33. Additionally, United Artists will lose featured options with years of term. United Artists has invested a massive sum of money in this property as Landlord's action is opportunistic (to improve its economic position). United Artists stands to lose its entire investment due to Landlord's bad acts.

## CAUSES OF ACTION

### COUNT I
### Declaratory Judgment

34. United Artists repeats and realleges every allegation set forth above as if fully set forth herein.

35. An actual justiciable controversy exists and will continue to exist between United Artists and Landlord with respect to the Lease, and a judicial determination of the rights and obligations of the parties with respect to the Lease is necessary in order that the rights and obligations of the parties may be determined and adjudged.

36. Additionally, the Lease provides that United Artists is entitled to extend the Lease if it provides written notice of its intent to exercise its option to extend nine months before the termination date and if it is not in default on the date it provides written notice, beyond any applicable grace and/or cure periods.

37. On October 2, 2020, United Artists provided its timely written notice of its intent to extend under the Lease, United Artists was not in default beyond any applicable grace and/or cure periods.

38. By reason of the foregoing, United Artists is entitled to a declaratory judgment declaring that (1) United Artists is not in default as alleged in the May Notices to Cure; (2) that Landlord's proposed termination under the May Notices to Cure is wrongful and in violation of the Court Orders; and (3) that United Artists is entitled to exercise the option to extend the Lease pursuant to its October

2, 2020 written notice and that Landlord's rejection of the same and threatened wrongful termination on July 5, 2021 is a violation of the Lease.

39. Without the granting of a declaratory judgment, Landlord may pursue termination via a summary proceeding falsely alleging non-payment and or a failure to cure its May Notices to Cure, and so the declaratory judgment is necessary to resolve the above-referenced issues of law and protect United Artists' leasehold interests.

40. United Artists has no adequate remedy at law.

## COUNT II
### Permanent Injunction

41. United Artists repeated and realleges every allegation set forth above as if fully set forth herein.

42. United Artists is entitled, pursuant to New York law, for relief from its obligations under the Lease during the Crisis. Notwithstanding United Artists' clear entitlement to such relief, Landlord seeks to terminate the Lease and deprive United Artists of its leasehold interests and business.

43. United Artists is further entitled to an injunction prohibiting Landlord from terminating the Lease pursuant to the May Notices to Cure and/or the December Notice to Cure.

44. United Artists is further entitled to an injunction prohibiting Landlord from rejecting United Artists' option to extend the Lease in accordance with its terms and prohibiting Landlord from terminating the Lease on July 5, 2021.

45. United Artists will suffer irreparable harm without an injunction, as, among other things, it will lose its ability to restore its business after the Crisis (which will impact the livelihood of its employees and the community where it has operated for more than 20 years, among other things) and deprive it of the benefit of its huge capital investment and allow Landlord to seize upon the world-wide crisis to improve its economic position.

46. The balance of the equities tips in United Artists' favor, because, among other things, Landlord is attempting to use a global pandemic and worldwide economic devastation as an opportunity to take advantage of its tenant, who is not at fault in this instance, and who is entitled to relief under the law and who has paid all charges due pursuant to the terms of the Court Order. Moreover, Landlord is not entitled to termination or to reject United Artists' extension as a matter of law.

47. Any interpretation of the expectations of the parties at the time of negotiation the Lease anticipated that United Artists would be able to operate its business at the Premises, and never did any of the parties to the Lease foresee the circumstances we all, collectively, find ourselves in today.

48. United Artists has no adequate remedy at law.

49. By reason of the foregoing, United Artists is entitled to an injunction enjoining and restraining the Landlord, its employees, servants, agents, attorneys, affiliates, partners and all other persons acting on its behalf from: (i) from terminating or attempting to terminate the Lease and/or the terminating or attempting to terminate the United Artists' leasehold interest and/or tenancy of United Artists at the Premises based upon the May Notices to Cure and/or December Notices to Cure or the defaults alleged therein, or for any alleged defaults by United Artists during the Crisis; and (ii) prohibiting Landlord from rejecting United Artists' exercise of its option to extend the Lease in accordance with its terms and prohibiting Landlord from terminating the Lease on July 5, 2021 by refusing to allow United Artists to exercise its option.

## COUNT III
### Attorneys' Fees

50. United Artists repeated and realleges every allegation set forth above as if fully set forth herein.

51. The Lease is an enforceable contract.

52. Section 27.18 of the Lease provides that the prevailing party in an action to enforce its rights under the Lease shall be entitled to its costs and attorneys' fees.

53. Accordingly, United Artists is entitled to recover its costs and attorneys' fees in order to protect its rights under the Lease.

WHEREFORE, United Artists respectfully requests that this Court enter an Order:

a) On the First Cause of Action, declaring that (1) United Artists is not in default as alleged in the May Notices to Cure; (2) that Landlord's proposed termination under the May Notices to Cure is wrongful; (3) that United Artists is entitled to exercise the option to extend the Lease pursuant to its October 2, 2020 written notice and that Landlord's rejection of the same and threatened wrongful termination on July 5, 2021 is a violation of the Lease; and that United Artists is relieved of its obligations under the Lease during the Crisis (include the payment of Fixed Minimum Rent and other applicable expenses) because performance of the Lease is impossible/impracticable and because the purpose of the Lease is frustrated.

b) On the Second Cause of Action, an injunction permanently enjoining and restraining the Landlord, its employees, servants, agents, attorneys, affiliates, partners and all other persons acting on its behalf from: (i) from terminating or attempting to terminate the Lease and/or the terminating or attempting to terminate the United Artists' leasehold interest and/or tenancy of United Artists at the Premises based upon the May Notices to Cure and/or December Notice to Cure (or the defaults alleged therein), or for any alleged default by United Artists during the Crisis; and (ii) prohibiting Landlord from rejecting United Artists' right to exercise its option to extend the Lease in accordance with its terms and prohibiting Landlord from terminating the Lease on July 5, 2021.

c) On its Third Cause of Action, awarding United Artists' its reasonable attorneys' fees and costs incurred in connection with this action and the enforcement of its rights under the Lease; and

d) For such other and further relief as the Court deems just and proper.

Dated: May 6, 2021
New York, New York

EINBINDER & DUNN LLP

By: */s/Michael Einbinder*
Michael Einbinder
Mackenzie Dimitri
112 Madison Avenue, 8th Floor
New York, New York 10016
Tel: (212) 391-9500
Fax: (212) 391-9025
me@ed-lawfirm.com
mld@ed-lawfirm.com
*Attorneys for Plaintiff*
